**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

DENISE A.,

                    *Plaintiff,*

          v.                                          Civil Action No. 20-15616 (KMW)

COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant.*

Appearances:

Richard Lowell Frankel, Esq.
          Counsel for Plaintiff Denise A.

James Austin McTigue, Esq.
Social Security Administration – Office of General Counsel/Special Assistant U.S. Attorney
          Counsel for Defendant Commissioner of Social Security

**WILLIAMS**, District Judge

## OPINION

## I.     INTRODUCTION

          This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of the Social

Security Administration ("Commission") denying the application of Denise ("Plaintiff")[1] for a

period of disability and disability benefits under Title II of the Social Security Act.  42 U.S.C. §

401, *et seq*.  Plaintiff, who suffers from a torn meniscus, degenerative disc disease, mild

---

[1] Plaintiff is identified only by his first name and last initial, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

osteoarthritis of his knees, osteoarthritis of his hips, obesity, and depressive disorder, seeks benefits for the period of disability and disability insurance benefits, alleging disability beginning on September 4, 2014.  In the pending appeal, Plaintiff argues: (1) the Administrative Law Judge ("ALJ") failed to find multiple impairments non-severe at Step Two and further failed to include limitations consistent with these conditions in Plaintiff's residual functional capacity ("RFC"); (2) the ALJ failed to incorporate limitations associated with Plaintiff's lumbar spine condition and depression into Plaintiff's RFC; and (3) the ALJ erred in giving Dr. Knod's opinion little weight without providing contradictory evidence to discount such opinion.  For the reasons stated below, this matter will be **REMANDED** in part and **AFFIRMED** in part.

## II.    BACKGROUND

### a.  Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") on October 14, 2016, alleging a disability onset date of September 4, 2014.  A.R. 17.  Plaintiff's original application was denied on February 16, 2017, and his petition for reconsideration was similarly denied on June 28, 2017.  A.R. 17.  On March 25, 2019, Plaintiff appeared before an ALJ for an administrative hearing (the "Hearing").  A.R. 17.  On May 7, 2019, the ALJ determined that Plaintiff was not disabled. A.R. 17.  Thereafter, on July 2, 2020, the Appeals Council denied Plaintiff's request for review. A.R. 17.  The parties timely completed briefing with respect to this matter.  ECF Nos. 11, 12, 13.

### b.  Factual & Medical History

Plaintiff is 48 years old and has a limited education.  A.R. 31.  Prior to the onset of his impairments, Plaintiff was employed in physically demanding work.  A.R. 31, 46, 240-247. Plaintiff has a history of pain and related conditions that have been affecting his back, hips, knees, and feet.  A.R. 292-299, 391, 494-502.  Plaintiff was diagnosed with lumbar and hip conditions,

including degenerative discs, inflammatory spondylopathy, lower back pain, and osteoarthritis of the left hip.  A.R. 493-494, 517.  In 2015, Plaintiff had a lumbar x-ray, and the imaging showed positive fundings in the lumbar region, including increased lumbar lordosis with sclerosis and degenerative changes, as well as positive findings in the hip region.  A.R. 391, 496.  In July 2016, Plaintiff underwent an MRI, which revealed "severe discogenic osteophytic disease at L4-L5 and L5-S1."  A.R. 379.  During an August 10, 2017 visit, Dr. Soloway, one of Plaintiff's treating physicians, indicated that "x-rays confirm osteoarthritis at L3-S1."  A.R. 382.  The physical examinations from Plaintiff's various physicians revealed positive findings including limited lumbar range of motion on flexion and extension, as well as pain and tenderness of the lumbar spine, hip, and knee, which were noted to increase with extension or motion.  A.R. 377, 380, 383, 386, 494, 505, 515.  At his appointments with Pain Specialists, PA, Plaintiff was told to stay as active as possible and to increase his daily activity.  A.R. 364, 369, 371, 372.

Plaintiff also has a history of knee pain and has been diagnosed with osteoarthritis of the left knee, tear of the lateral meniscus of the left knee, and left knee pain.  A.R. 492.  An MRI from August 12, 2016 showed a significant medial meniscal tear of the left knee with mild cartilage irregularity, patellar median, eminence having a partial thickness.  A.R. 450, 496.  Dr. Soloway prescribed Plaintiff a brace for his left knee and referred Plaintiff to pain management for further treatment.  A.R. 448.  Moreover, on November 8, 2018, Plaintiff's orthopedic doctor, Dr. Mark Levitsky, performed a left knee arthroscopy, where it was noted that Plaintiff had a torn medial meniscus in his left knee with grade 3 to grade 4 chondromalacia of the medial femoral condyle, but the procedure also showed that (i) Plaintiff's anterior cruciate ligament was intact; (ii) there was very minimal fraying of the lateral meniscus; and (iii) claimant's articular cartilage of the lateral compartment was normal.  A.R. 441-442.  Moreover, medical records from early 2019

3

indicated that Plaintiff's knee was stable on his medications and he continued to benefit from increased function.  A.R. 494, 497.

Additionally, Plaintiff has a history of heel, arch, and ankle pain, and has been diagnosed with a number of conditions, with bilateral plantar fasciitis being most relevant.  A.R. 489.  Starting in 2015, Plaintiff complains to Dr. Soloway of foot pain, wherein Dr. Soloway notes that "plantar fascia surgery has made the pain worse, not better."  A.R. 376.  In October 2018, Plaintiff had an x-ray of his feet, which noted bilateral "retrocalcaneal spurring" and bilateral "mild plantar calcaneal spurring," with no fractures or dislocations.  A.R. 429.  The records indicate that Plaintiff is able to ambulate effectively without the use of a cane or walker.  A.R. 475.

Plaintiff presents medical records indicating a history of wrist and hand pain and tingling at times, as well as a diagnosis of bilateral carpal tunnel syndrome.  A.R. 385-386, 388-389, 391, 405.  Notably, these complaints largely appear in Dr. Soloway's and Dr. Knod's medical records but are absent from a number of the other medical records, including the disability determination reports.  Notes from an April 2017 visit with Dr. Soloway indicate that "MRI of right hand and wrist was normal."  A.R. 385.

Plaintiff has a history of receiving mental health treatment at the Community Health Center in 2016 and has been diagnosed with severe major depressive disorder, single episode, with anxious distress.  A.R. 335-350.  On January 11, 2017, Plaintiff underwent a Mental Status Examination wherein Dr. Theodore Brown found that Plaintiff gets easily agitated, yells, screams, and curses and diagnosed Plaintiff with depressive disorder and generalized anxiety disorder.  A.R. 357.  Dr. Brown also cited to Plaintiff's difficulty concentrating and specifically found that Plaintiff appeared to have problems with focus and concentration, as well as retention of information.  A.R. 359.  Finally, in Plaintiff's February 16, 2017 and June 27, 2017 disability

determinations, the examiners found that Plaintiff had sustained concentration and persistence limitations, noting that his "ability to carry out detailed instructions" and his "ability to maintain attention and concentration for extended periods" were "moderately limited." A.R. 73, 89.

On March 4, 2019, Dr. George Knod performed a single and isolated physical examination of Plaintiff at the request of Plaintiff's attorney. Plaintiff relies heavily on Dr. Knod's findings. As part of his examination, Dr. Knod reviewed Plaintiff's medical records, various radiographic reports, obtained a medical history from Plaintiff, and performed a physical examination of Plaintiff. A.R. 471-488. In his examination, Dr. Knod noted that Plaintiff's chief complaints were chronic low back pain, recent upper back pain, bilateral knee pain, and bilateral foot pain. A.R. 474. After completing his medical examination, Dr. Knod diagnosed Plaintiff with (1) chronic low back pain syndrome, (2) severe osteophytic disease, (3) bilateral lumbar radiculopathy, (4) severe restricted lumbar range of motion, (5) lumbar facet syndrome, (6) bilateral carpal tunnel syndrome, (7) bilateral plantar fasciitis, (8) neuritis of the bilateral feet, and (9) chronic left knee pain. A.R. 476-477. Based on these diagnoses, Dr. Knod made a number of comments and recommendations concerning Plaintiff's limitations, specifically indicating that Plaintiff would be able to lift up to 10 lb. on a frequent basis; up to 20 lb. occasionally; and never over 21 lb.; Plaintiff's total time for sitting, standing and walking would not equal or exceed 8 hours; Plaintiff's pulling and pushing activities should be restricted (without specific restrictions identified); Plaintiff's repetitive operation of foot controls is restricted (without specific restrictions identified); Plaintiff's ability to climb stairs is limited, and he would rarely be able to perform balancing, stooping, kneeling, crouching or crawling. A.R. 478. Finally, Dr. Knod concluded that Plaintiff's "functional limitations would limit his ability to work in a competitive environment on a regular continual basis." A.R. 478.

### c.  Hearing Testimony

At the Hearing on March 25, 2019, Plaintiff was represented by counsel and testified before the ALJ.  During the Hearing, Plaintiff complained of pain in his back, knee, and hips and indicated that he is suffering from depression.  A.R. 21-26.  He explained that he cannot stand or sit for long periods of time, expanding that he is unable to get into a comfortable position because when he stands, his feet hurt, and when he sits, his back hurts.  A.R. 46, 48-50.  During the Hearing, Plaintiff was wearing a boot, which he indicated he started using two weeks prior to avoid another operation, noting he had an operation on his left foot in 2009.  A.R. 47-49.  He noted that he has a back brace, but that he tries not to wear it because it bothers him more than it helps him.  A.R. 47.  Plaintiff also stated that he has trouble concentrating and reported that he requires breaks throughout the day.  A.R. 46, 54.  Concerning his work history, Plaintiff testified that he last worked in 2014 and cannot work due to his back pain, explaining that prior to the onset of his disability, he did a variety of work that required significant exertion, including demolition work and work in fiber glass production.  A.R. 31, 46, 56.  Additionally, Plaintiff conveyed to the ALJ that while he can take care of himself generally, it may take him longer to do basic tasks, and that his family helps him with chores around the house, noting that when he tries to do household chores he has to stop a lot and sit down because he is in pain.  A.R. 51-52.  He also has difficulty concentrating and suffers from depression, all seemingly impacting his ability to complete household chores.  A.R. 51-53.  With respect to using his hands, Plaintiff testified that he does not have difficulty using his hands, noting that he can grasp things, but indicated that sometimes his hands can numb up while he is watching television.  A.R. 52.  While Plaintiff indicated that he does not type well, he testified that it would not be painful for him to write.  A.R. 52-53.  Finally, Plaintiff informed the ALJ that at the time of the Hearing, he was taking tramadol, gabapentin,

ibuprofen, and doxepin for his various conditions, but noted that the gabapentin has not helped him with his anxiety and depression. A.R. 47-48. Plaintiff reported that he is experiencing side effects from his medications, conveying that he gets tired, nervous, shaky and sleepy as a result of the medication. A.R. 48. Additionally, Plaintiff indicated that the mediations affect his ability to concentrate because they make him drowsy. A.R. 48.

The ALJ also heard testimony from Louis Szollosy, an impartial vocational expert ("VE"), who answered a number of questions and hypotheticals concerning a person of Plaintiff's age, education, work history, and RFC. A.R. 56-59. For instance, the ALJ asked the VE whether a person of Plaintiff's age, education, work history, and RFC could perform Plaintiff's past relevant work. A.R. 56-57, 61. The VE testified that such a person could not perform Plaintiff's past relevant work, but he could perform other jobs available in the national economy, including as a mail clerk, information clerk, and inspector/hand packager. A.R. 57-58. The VE explained that each of the job's total available positions would be reduced by 50% based on the RFC restrictions for a reduced range of light work. A.R. 57-58. Accordingly, the VE testified that the total combined jobs remaining after the 50% reduction based on the RFC was 790,000 positions. A.R. 57-58.

## III.   LEGAL STANDARD

### a.  Standard of Review

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) providing the court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C.

§ 405(g); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, even if it would have made a different determination. *Id.* (citing *Fargnoli*, 247 F.3d at 38). Accordingly, the Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

Crucially, the Commissioner "'must adequately explain in the record his reasons for rejecting or discrediting competent evidence.'" *Friday v. Comm'r of Soc. Sec.*, No. 1:20-CV-04504-NLH, 2021 WL 3879081, at *2 (D.N.J. Aug. 31, 2021) (quoting *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must consider and weigh both medical and non-medical evidence before him. *Id.* (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981). Accordingly, the Third Circuit has made clear that access to the Commissioner's reasoning behind his decision is essential to a meaningful court review, holding that:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review, which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see also A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### b. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ need not

proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4).

Step One requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§404.1510.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits, regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to the next step.

At Step Two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Section 404.1509.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment or a combination of impairments is *not* severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. § 404.1521; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  Alternatively, an impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the ALJ does not find a severe impairment or combination of impairments, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to next step.

At Step Three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. § 404.1520(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity

of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in Step Four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. § 404.1545.  The ALJ considers all medically determinable impairments in this analysis, not just those deemed to be severe.  20 C.F.R. § 404.1545(a)(2); SSR 96-8p.  After determining a claimant's RFC, the ALJ at Step Four must determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).  If, however, the claimant is unable to resume his or her past work, the disability evaluation proceeds to the next and final step.

At Step Five, the ALJ must determine whether the claimant considering his or her RFC, age, education, and work experience, is able to do any other work.  20 C.F.R. § 404.1520(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at Step Five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. § 404.1560(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled.  20 C.F.R. § 404.1520(a)(4)(v).

## IV.   DISCUSSION

After the Hearing, the ALJ found that Plaintiff was not disabled because, after completing the five-step disability analysis, "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform."  A.R. 31.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  A.R. 19.  At Step

Two, the ALJ found that Plaintiff's impairments of torn meniscus (left knee, status post-surgery); degenerative disc disease (lumbar spine); mild osteoarthritis of the medial joint space bilaterally (knees); osteoarthritis (bilateral hips); obesity; and depressive disorder were severe.  A.R. 19.  At this same step, the ALJ found that "[a]lthough there are references to other conditions in [Plaintiff's] medical records such as ganglian cysts in [Plaintiff's] right wrist (with no degenerative or erosive changes in the wrist), mild bilateral carpal tunnel syndrome post-surgery; plantar fasciitis post-surgery; and Vitamin D deficiency" such impairments were non-severe "when considered singularly or in combination with other impairments."  A.R. 19-20.  The ALJ noted that "[t]here is insufficient evidence that these conditions resulted in any lasting functional loss and/or do not appear likely to lead to death or last for 12 months or more."  A.R. 20.  At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  A.R. 20. The ALJ next determined that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: can stand and/or walk for only 4 hours in an 8 hour workday; can only occasionally climb, balance, stoop, kneel, crouch or crawl; must avoid heights; can never have contact with the general public; and can only perform simple and routine tasks." A.R. 21.  At Step Four, the ALJ found that given Plaintiff's limitations, he is unable to perform any past relevant work.  A.R. 31.  Finally, at Step Five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform."  A.R. 31. Therefore, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from September 4, 2014, through the date of the ALJ's decision.  A.R. 33.

On appeal, Plaintiff seeks review of the Commissioner's decision.  Pltf.'s Br., ECF No. 11

at 1.  Plaintiff raises three primary issues with the ALJ's decision for the Court's consideration on appeal.  First, Plaintiff argues that the ALJ erred in failing to find multiple impairments severe at Step Two and failing to incorporate such limitations  into Plaintiff's RFC.  *Id.* at 15-20.  Second, Plaintiff asserts that the ALJ erred in failing to incorporate sufficient limitations associated with Plaintiff's depression, lumbar, hip, and knee conditions, in Plaintiff's RFC.  *Id.* at 20-28.  Third and finally, Plaintiff claims that the ALJ erred in dismissing the opinion of Dr. George Knod without the requisite substantial evidence.  *Id.* 28-30.  The Court will address each of these arguments.

**a.  Step Two determinations of non-severe impairments**

Plaintiff first asserts that the ALJ committed an error by characterizing a number of conditions as "non-severe" at Step Two of the analysis.  Plaintiff further alleges that such mischaracterization warrants remand because the ALJ subsequently failed to take these non-severe conditions into consideration when preparing Plaintiff's RFC.

At Step Two the ALJ must determine whether the claimant suffers from a severe impairment or a combination of impairments that meets the duration requirement found in Section 404.1509 to constitute a severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii).  To be found severe, an impairment, or combination of impairments must significantly limit a claimant's physical or mental ability to do basic work activities, including *inter alia* "'[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.'"  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521(a), 416.921(a), 404.1521(b)(1), 416.921(b)(1)).  "When an ALJ finds that the claimant has at least one severe impairment, omission of another at step two may be harmless error as long as the impairment is considered regarding the RFC or would not affect the outcome

13

of the case." *Richardson v. Comm'r of Soc. Sec.*, No. CV 16-8279 (KM), 2017 WL 6550482, at

*5 (D.N.J. Dec. 22, 2017) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d

Cir. 2007)).

In this case, the ALJ found multiple impairments severe at Step Two and thus the Court

must consider whether any error in characterizing certain impairments as non-severe was harmful.

Accordingly, the Court must examine whether the ALJ considered these non-severe impairments

when making the RFC, or whether the omission of the impairments found as non-severe would

affect the outcome of the case. *Torres v. Comm'r of Soc. Sec.*, No. 1:17-CV-00843-NLH, 2018

WL 1251630, at *5 (D.N.J. Mar. 12, 2018) (citing 20 C.F.R. § 404.1545(a)(2)).

Critically, the ALJ does not expressly address whether the conditions characterized as non-

severe at Step Two are medically determinable impairments. This determination is relevant here

because "'[a]lthough the impairment must be medically determinable, it need not be a severe

impairment to be considered in the RFC assessment.'" *Salles*, 229 F. App'x at 147 (citations

omitted); *see also Friday*, 2021 WL 3879081 at *4 (explaining that "the RFC assessment must

take into consideration all of a claimant's medically determinable impairments in combination,

including those that the ALJ has found to be severe, as well as those that the ALJ has not deemed

severe at step two"). In other words, "[a]n ALJ may only disregard an impairment in the RFC

determination if that impairment has not been found to be medically determinable and has no

demonstrable symptoms." *Robert E. v. Comm'r of Soc. Sec.*, No. 1:20-CV-06882-NLH, 2021 WL

5277193, at *6 (D.N.J. Nov. 12, 2021). In *Diciano v. Commissioner of Social Security*, this district

explained that "[i]t is true that an ALJ must assess a claimant's severe impairments in combination

with non-severe impairments," but "an ALJ does not have to consider an alleged impairment if he

does not find such an impairment is medically determinable." No. 1:18-CV-17383-NLH, 2019

14

WL 6696523, at *4 n.6 (D.N.J. Dec. 9, 2019).  Section 404.1521 provides guidance on how a

claimant may establish the existence of a medically determinable impairment, explaining that:

> Your impairment(s) must result from anatomical, physiological, or psychological
> abnormalities that can be shown by medically acceptable clinical and laboratory
> diagnostic techniques.   Therefore, a physical or mental impairment must be
> established by objective medical evidence from an acceptable medical source.  We
> will not use your statement of symptoms, a diagnosis, or a medical opinion to
> establish the existence of an impairment(s).  After we establish that you have a
> medically determinable impairment(s), then we determine whether your
> impairment(s) is severe.

20 C.F.R. § 404.1521.  Therefore, an impairment must first be characterized as a medically

determinable impairment before an ALJ may determine that such impairment is severe.

This Court is in no position to make determinations concerning whether a health condition

is a medically determinable impairment pursuant to the regulations, and without a clear

determination of whether the non-severe conditions are medically determinable, the Court is

unable to analyze whether the RFC properly incorporated limitations related to these conditions.

When the ALJ has failed to perform an essential analysis, this Court is unable to determine whether

the ALJ's decision is supported by substantial evidence.  *See Robert E.*, 2021 WL 5277193, at *7.

Consequently, the ALJ's decision is **VACATED** and the matter is **REMANDED** for further

proceedings so that the ALJ may properly consider and characterize Plaintiff's non-severe

impairments, and if such impairments are medically determinable, consider how Plaintiff's non-

severe impairments affect his RFC and his capability to perform work that exists in the national

economy.

### b.  Plaintiff's RFC

While the ALJ found that Plaintiff suffered from a number of severe impairments, Plaintiff

argues that the ALJ failed to incorporate certain limitations associated with these impairments in

the RFC, including "Plaintiff's sitting limitations and need for breaks, Plaintiff's medication side

effects, and limitations consistent with Plaintiff's concededly moderate limitations in concentration, persistence and pace." Pltf.'s Br., at 20.  Specifically, Plaintiff asserts that "the ALJ failed to produce the explanation necessary to discount the probative evidence that Plaintiff's back, hip, and knee conditions limit Plaintiff's ability to sit, and force Plaintiff to take breaks." *Id.* at 20-22.  Additionally, Plaintiff explains that "the ALJ provided inadequate grounds for discounting the severity of Plaintiff's conditions [and that the ALJ] reject[ed] without explanation the objective medical evidence which fully substantiates the severity of Plaintiff's limited functionality." *Id.* at 23.  Plaintiff states that "the ALJ's citation to normal findings amounts to impermissible speculative inference substituting the ALJ's lay opinion with that of medical professionals." *Id.* at 24.

When preparing the RFC, the ALJ "need only include . . . those limitations which he finds credible." *Salles*, 229 Fed.Appx. at 147.  "A claimant's RFC should adequately reflect his or her 'credibly established limitations,' especially when later used as the basis for a vocational expert hypothetical." *Sudler v. Commissioner of Social Security*, 827 F. App'x 241, 245 (3d Cir. 2020) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)).  Accordingly, in establishing a claimant's RFC, the ALJ must determine which of a claimant's alleged limitations are credible, and when an ALJ finds that some alleged limitations are less than credible, he or she may properly exclude such limitations from the RFC.  *See Salles*, 229 F. App'x at 147.  "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC." *Id.* at 148 (citations omitted).

Here, the ALJ provided a comprehensive analysis of each of the medically determinable impairments from which Plaintiff suffered, and explained the limitations associated with such impairments.  A.R. 21-27.  The ALJ's analysis was further supported by extensive citations to the

medical records within the Administrative Record.

Additionally, courts grant "great deference" to the ALJ's credibility determinations, and "'[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal.'" *Richardson*, 2017 WL 6550482, at *8 (quoting *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015)). An ALJ is entitled to question a claimant's self-reported symptoms and examine whether the claimant's "'statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 204 (3d Cir. 2019) (citation omitted). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state her reasons for accepting or discounting it, and make "specific findings." *Richardson*, 2017 WL 6550482, at *8 (citing *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003)). "Where this has been done, a reviewing court will defer to the ALJ's credibility determination." *Id.* at *8.

In this case, the Court will defer to ALJ's credibility determinations, especially with respect to Plaintiff's self-reporting of the intensity, persistence and limiting effects of his symptoms. *Richardson*, 2017 WL 6550482, at *8 (quoting *Hoyman*, 606 F. App'x at 681). The ALJ considered Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, explaining that while Plaintiff's "symptoms are supported by evidence in the record, the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record." A.R. 27. The ALJ further explained that the medical evidence demonstrates that Plaintiff has "full range of motion of his lumbar spine in all planes, his hips, his knees, his feet and ankles," that there is other evidence of functionality and range of motion, and that Plaintiff's doctors

"encouraged him to remain active rather than rest around the house." A.R. 27-28. Thus, the Court will defer to the ALJ because she sufficiently explained her credibility determination concerning Plaintiff's self-reporting, which she supported by references to medical records contradicting Plaintiff's statements. *Hess*, 931 F.3d at 204.

Finally, "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four." *Ortiz v. Colvin*, 227 F. Supp. 3d 350, 359 (D.N.J. 2017) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546); *Burnett*, 220 F.3d at 121. All "relevant evidence" includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Ortiz*, 227 F. Supp. 3d at 359 (citing 20 C.F.R. § 404.1545(a)). Additionally, an ALJ's determination of an RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. Accordingly, an ALJ must not only discuss the evidence that he or she considered that supports the decision, but must also address the evidence that he or she rejected. *Id.* at 705.

Here, the ALJ discussed the various opinions, both medical and non-medical, that she considered when preparing Plaintiff's RFC. A.R. 28-30. For example, the ALJ discussed and dismissed Plaintiff's self-reports of intensity, persistence, and limiting effects of his symptoms citing Plaintiff's medical records from a consultative examination report that contradicted his self-reporting. A.R. 27-28. The ALJ also discussed and considered evidence from the state agency medical and mental health consultants concerning Plaintiff's conditions and any requisite limitations. A.R. 28-29. Moreover, the ALJ evaluated the opinions of Plaintiff's own physicians, including the opinions of Dr. Cunningham, Dr. Brown, and Dr. Knod. A.R. 29-30. Finally, the ALJ considered an informal third party function report provided by Plaintiff's son in examining

Plaintiff's physical limitations at home.  A.R. 30.  The ALJ further afforded weight to the different opinions and justified the weight given to each opinion within the decision.  A.R. 28-30.

Upon review of the ALJ's decision, the Court is satisfied that the RFC determination is supported by substantial evidence.  The Court will thus **AFFIRM** the ALJ's RFC determinations based on the medically determinable impairments currently identified.  This Court has no opinion and will not speculate concerning a potential hypothetical RFC that may be based on additional medically determinable impairments as discussed above.

### c.  Dr. Knod's medical opinion

Finally, Plaintiff argues that the ALJ failed to provide "contradictory evidence to discount Dr. Knod's opinion, much less the substantial evidence required to dismiss a medical source opinion."  Plaintiff further asserts that "the ALJ's rational here is unsubstantiated, as Dr. Knod supported his findings with comprehensive physical examination of Plaintiff and extensive review of Plaintiff's medical history," and that the ALJ did not cite to "a single page within the record to support" the assertion that the restrictions imposed by Dr. Knod are more extreme than necessary. Plaintiff concludes by explaining that the error in considering Dr. Knod's opinion is significant because the limitations found by Dr. Knod "have prohibitive implications for Plaintiff's occupational base and at bare minimum warrant remand for an evaluation of Plaintiff's capacity to perform work on a 'regular and continuing bases.'"  Pltf.'s Br., at 28-30.

"An ALJ 'must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'"  *Tedesco v. Commissioner Social Security*, 833 Fed.Appx. 957, 961 (3d Cir. 2020) (quoting *Burnett*, 220 F.3d at 121); *see also Ogden*, 677 F. Supp. at 278 (explaining that the Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence") (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  "An

ALJ may 'weigh the [conflicting] medical evidence and draw [her] own inferences.'" *Brunson v. Commissioner of Social Security*, 704 F. App'x 56, 59 (3d Cir. 2017) (quoting *Brown v. Astrue*, 649 F.3d 193, 196-97 (3d Cir. 2011)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  *Burnett*, 220 F.3d at 122. "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Here, Dr. Knod is not a treating physician and performed a single, isolated medical examination of the claimant on March 4, 2019 at the request of the claimant's representative.  In completing the examination, Dr. Knod spoke with Plaintiff, reviewed Plaintiff's medical records and medical history, and performed a physical examination.  Based on his review of the medical records, history, and his examination of Plaintiff, Dr. Knod made a variety of diagnoses and commented on Plaintiff's physical limitations, as discussed herein.  A.R. 476-478.  Based on Dr. Knod's limited interactions with Plaintiff, the ALJ afforded Dr. Knod's opinion "little weight," explaining that "Dr. Knod appears to have relied on the claimant's representation as to his inability to sit, stand and walk for 8 hours since he relied on the claimant to tell him how he spends the remainder of this time during the 8 hour period.  Moreover, the restrictions imposed by Dr. Knod are more extreme than necessary given the claimant's longitudinal medical record."  A.R. at 29. The Court finds that the ALJ's explanation is sufficient to support her consideration of Dr. Knod's opinion, and moreover, the ALJ's determination is supported by substantial evidence found in the Administrative Record, given the lack of other medical records corroborating the medical conditions and severe limitations presented by Dr. Knod.  *See Cotter*, 650 F.2d at 482 (explaining that "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence").

The Court will **AFFIRM**  that ALJ's decision to give to Dr. Knod's opinion little weight.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's determination is **VACATED** and **REMANDED** with respect to the determination of medically determinable impairments and the effect of the RFC related thereto.  On the other issues presented for appeal, the ALJ's decision is **AFFIRMED**.


Dated: June 10, 2022                                      s/ Karen M. Williams
                                                         KAREN M. WILLIAMS
                                                         United States District Judge

21